## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WALKME LTD.,<br><br>    Plaintiff,<br><br> v.<br><br>WHATFIX INC.,<br><br>    Defendant. | C.A. No.<br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFF WALKME LTD.'S ORIGINAL COMPLAINT

Plaintiff WalkMe Ltd. ("Plaintiff" or "WalkMe"), for its complaint against Defendant Whatfix Inc. ("Defendant" or "Whatfix"), by its undersigned counsel, hereby alleges as follows:

### PARTIES

1. Plaintiff WalkMe Ltd. is a company organized under the laws of Israel with its principal place of business at 3 Kremenetski Street, 2nd Floor, Tel Aviv, 6789903 Israel.

2. Upon information and belief, Defendant Whatfix is a corporation organized under the laws of Delaware, having its principal place of business in this District at 2107 N. 1st Street, Suite 450, San Jose, California 95131.

### JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this patent infringement action under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, Title 35 United States Code, including 35 U.S.C. § 1, et seq. This complaint includes claims for patent infringement arising under the patent laws of the United States, including 35 U.S.C. § 271, et seq.

4.      Defendant is subject to personal jurisdiction in this District because, based on information and belief, it is deemed to reside in this judicial district by virtue of being incorporated in the State of Delaware.  Accordingly, this Court may properly exercise personal jurisdiction over Defendant

5.      This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338(a), and Title 35 of the United States Code.

6.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c), and/or 1400(b), at least because Defendant is deemed to reside in this judicial district by virtue of being incorporated in the State of Delaware.

## WALKME'S BUSINESS

7.      WalkMe was founded in 2011 as a company developing a computer system guidance and navigation tool.  WalkMe is the pioneer of its signature Digital Adoption Platform which simplifies the user experience by using, for example, system guidance capabilities designed to drive users to adopt digital systems.

8.      WalkMe has further developed technology in the field of automation of computer programs and processes.  For example, WalkMe's innovative ActionBot™ feature understands what users want to do and automates tasks for them. The ActionBot™ uses a natural language chat interface making process automation as simple as holding a conversation. The ActionBot™ enhances the customer and employee experience by eliminating confusion, errors, and frustration while helping users complete tasks.

9.      ActionBots™ can be defined by WalkMe's customers without using any code, and without relying on API ("Application Programming Interface").  Instead, users can define automation processes by clicking on elements of a Graphical User Interface ("GUI") of the

2

relevant system and defining relevant actions regarding those elements.  Simply put, WalkMe's ActionBots™ define and utilize the GUI of the system as a replacement of an API, enabling no-code paradigm and without relying on third-parties to expose their functionality with APIs.

10.     By using ActionBot™'s intuitive chat-interface, users are able to complete tasks without any training, even as they move across different software tools. With the ActionBot™, employees of WalkMe's corporate customers no longer need to navigate sophisticated enterprise management systems, fill in complex forms, or struggle through difficult processes.

## THE PATENTS-IN-SUIT

11.     Plaintiff WalkMe Ltd. is the assignee of United States Patent Nos. 10,819,664 ("the '664 Patent," Exhibit A), 11,258,732 ("the '732 Patent," Exhibit B), and 11,558,317 ("the '317 Patent," Exhibit C) (collectively, the "Patents-in-Suit").

12.     On October 27, 2020, the United States Patent and Trademark Office duly and legally issued the '664 Patent, entitled "Chat-Based Application Interface for Automation."  A true and correct copy of the '664 Patent is attached as Exhibit A.

13.     On February 22, 2022, the United States Patent and Trademark Office duly and legally issued the '732 Patent, entitled "Automation Process Definition for a Natural Language Interface."  A true and correct copy of the '732 Patent is attached as Exhibit B.

14.     On January 17, 2023, the United States Patent and Trademark Office duly and legally issued the '317 Patent, entitled "Invoking an Automatic Process in a Web-Based Target System using a Chat-Bot."  A true and correct copy of the '317 Patent is attached as Exhibit C.

15.     The Patents-in-Suit are directed generally to the technology underlying WalkMe's innovative ActionBot™ feature.  For instance, the Patents-in-Suit disclose and claim inventions relating to the automation of computer programs and processes based on user input through chat-

based application interfaces.  Through the methods and apparatuses disclosed by the Patents-in-Suit, a user can interface with a chat-based application in order to automate various processes of a computer program.

16.     The Patents-in-Suit disclose and relate to computer programs known as "chatbots."  Chatbots are computer programs that conduct conversations with a user to perform specific functions.  *See* Ex. A at 1:21-23.  Typically, conventional computer programs can perform specific functions and automated tasks through the use of APIs.  *Id*. at 1:37-40.  However, this approach can be problematic, challenging, tedious and inefficient, because it can require continuous addition and creation of dedicated APIs to perform specific tasks, and relies on the goodwill of the developer of the computer program to expose such functionality via APIs.

17.     Chatbots can allow for a process to be automated through conversations with a user.  The chatbot can scan for keywords input by a user to conduct a task or provide specific functionality based on the APIs used to perform the actions.  *Id*. at 8:17-23.  However, chatbots may still be limited due to the functionality being dependent on APIs to perform actions

18.     In order to solve this technological shortcoming, and to ensure the increased functionality of the chatbots, the Patents-in-Suit describe and disclose embodiments where chatbots utilize a graphical user interface (GUI) as well as a natural language interface to receive input from a user and select an automated process, using said input.  *Id*. at 8:65-9:5.

19.     The inventions of the Patents-in-Suit are more than just integration and operation of standard chatbot products and services.  Rather, the Patents-in-Suit disclose apparatuses and methods of chatbot configuration to enhance both the user experience and the automated processes available, previously limited in the prior art due to the reliance on APIs rather than the GUI.  For example, the patented chatbots may be configured to function over various underlying

4

platforms, including through third-party systems, such as a messaging service, to automate a

process on a different system.  *See* Ex. B at 6:26-40.  Such functionality improves the user

experience by ensuring a more user-friendly process.  This technology was not well-known or

routine in the art, as described below, for example:

> One technical problem dealt with by the disclosed subject matter is to provide for
> a user-friendly manner of defining functionality of chat bots. In particular,
> defining automation processes to be invoked by chat bots, either dedicated chat
> bots, such as implemented on a target system where the functionality is invoked,
> or even using third-party services, such as FACEBOOK MESSENGER™ are the
> communication platform for the chat bot service, which later invokes the
> automation process itself on the target system.

Ex. E at 4:59-67.

20.    The invention of the Patents-in-Suit enhanced the operation of computer programs

by increasing the functionalities of a chatbot and the automated processes thereby carried out due

to the utilization of the GUI rather than APIs. Due to the patented inventions, "different

functionalities may be implemented and there may be no limit to what the chat bot can invoke,

except for the limitations of the target system's own capabilities."  Ex. E at 6:17-20.  What

previously hindered the field of automated computer processes was overcome by the

embodiments disclosed by the Patents-in-Suit utilizing chatbot products and services operating in

conjunction with the GUI and a natural language interface, and not reliant upon API.

21.    The inventions described and claimed in the Patents-in-Suit were developed and

marketed by WalkMe as a natural language chatbot interface known as ActionBot™ which

allows users to perform entire tasks from a central conversational interface.  WalkMe's

innovative ActionBot™ streamlines the user experience by reducing the need to search, operate

and navigate through sophisticated systems and processes, thereby reducing user error and

increasing efficiency.

22.     Through the use of ActionBot™, information provided by a user through a chatbot interface can be pulled and utilized to automate processes and perform tasks without being reliant solely on dedicated APIs.

### WHATFIX'S ACCUSED PRODUCTS AND METHODS

23.     Whatfix uses, sells, offers, and makes WalkMe's patented chatbot technology. *See* Exhibit D (screenshot of Whatfix chatbot support page).  For example, Whatfix describes and offers "Chatbot service" for users to "integrate Whatfix content…and launch Whatfix content to respond to chatbot queries."  *Id*.

## Chatbot support

🗓 Updated On 13 Dec 2022 • ⏱ 1 Minute To Read

You can integrate Whatfix content with your Chatbot service and launch Whatfix content to respond to chatbot queries.

Whatfix can be integrated with all the popular chatbot services. This way, you can support and deliver Whatfix content to your users as a bot response irrespective of the chatbot platform you use.

*Id*.

24.     Whatfix states its "[u]sers can interact with the bot, and based on the inputs provided, the bot presents them with the most relevant Flows."  *Id*.  Whatfix's Chatbot service also "can be used to ask questions in a conversational manner."  *Id*.

## Use cases

- Users can interact with the bot, and based on the inputs provided, the bot presents them with the most relevant Flows. When users click a Flow, the process is automatically completed for them.
- When certain information is required from the user before or while performing a task, the bot can be used to ask questions in a conversational manner, and the inputs thus garnered can be used to complete the task.

*Id*.

25.     Upon information and belief, Whatfix knows that its web-based platform and chatbot feature infringe the Patents-in-Suit.

26.     Whatfix has been given actual notice of its infringement of the '664 Patent, '732 Patent, and the allowed claims of U.S. Patent Pub. No. 2022/0150251 that issued as the '317

6

Patent, through a letter from WalkMe's counsel addressed to Whatfix's Legal Department, dated December 15, 2022, sent by overnight mail to Whatfix's headquarters and by email to Whatfix's Legal Department. *See* Exhibit E. The letter notified Whatfix of the Patents-in-Suit and WalkMe's belief that Whatfix's platform and chatbot offering infringe the Patents-in-Suit.

27.     WalkMe has suffered, and will suffer, irreparable injury unless Whatfix is enjoined from willfully infringing, willfully inducing infringement of, and/or willfully contributing to the infringement of the Patents-in-Suit.

28.     WalkMe has suffered, and will suffer, damages from Whatfix's willful infringement, willful inducement of infringement, and/or willful contributory infringement.

EAST\200952683.1

## FIRST CAUSE OF ACTION
### (Infringement of the '664 Patent)

29.     WalkMe incorporates and re-alleges Paragraphs 1 through 28 above as if fully set forth and stated herein.

30.     The '664 Patent is valid and enforceable.

31.     WalkMe owns the entire right, title, and interest in and to the '664 Patent, including the right to sue and recover damages, including damages for past infringement.

32.     In violation of 35 U.S.C. § 271, Whatfix has infringed and continues to infringe the '664 Patent, literally and/or under the doctrine of equivalents, by making, using, offering for sale, and/or selling in this judicial district and elsewhere in the United States, its web-based platform and chatbot feature.

33.     Whatfix offers a web-based platform and chatbot feature that fall within the scope, and practice each and every limitation, of at least claims 1-9, 14, 18, 20-23, 28, 29, and 33 of the '664 Patent.  Attached as Exhibit F is an exemplary claim chart demonstrating Whatfix's infringement of at least claim 29 of the '664 patent.

34.     For example, Whatfix supports the use of a chatbot using a natural language interface.  (*See* Exs. D, F).  The Chatbot receives natural language input from a user through natural language conversation between the natural language interface and the user, as shown below, for example:



Ex. D.

35.     Whatfix offers a web-based platform and chatbot feature that further comprise natural language conversation with first natural language input from a user, natural language feedback, and second natural language input:



Ex. F.

36.     Whatfix selects an automation process based on the natural language input in the conversation with a user, performing a sequence of interactions with the displayed user interface. *See* Ex. F.  Whatfix further offers Flows that simulate user interactions with the displayed interface, including by inputting data and executing functionalities of the target application. Such examples include clicking, hovering, and selecting, as shown below, for example:

9



*Id.*

37.    In addition, Whatfix states it is useful to receive inputs from the user to decide on the flow and to get input that is utilized to complete the automated task, as shown below, for example:

**Use cases**

- Users can interact with the bot, and based on the inputs provided, the bot presents them with the most relevant Flows. When users click a Flow, the process is automatically completed for them.
- When certain information is required from the user before or while performing a task, the bot can be used to ask questions in a conversational manner, and the inputs thus garnered can be used to complete the task.

Ex. D.

38.    Whatfix further automates processes that are triggered and implemented to perform the sequence of interactions, as shown below, for example:

10



Ex. F.



*Id.*

39.     On information and belief, Whatfix, without authority, has actively induced and continues to actively induce infringement of at least claims 1-9, 14, 18, 20-23, 28, 29, and 33 of the '664 Patent under 35 U.S.C. § 271(b).  Whatfix has, among other things, instructed others to

11

use its web-based platform and chatbot feature within the United States that infringe at least claims 1-9, 14, 18, 20-23, 28, 29, and 33 of the '664 Patent.

40.     On information and belief, at least as early as December 15, 2022, Whatfix is aware of its infringement of the '664 Patent and has had a specific intent to infringe and encourage others to infringe the '664 Patent.

41.     On information and belief, Whatfix has contacted and solicited potential customers regarding its web-based platform and chatbot feature on its website, with an intent to encourage those potential customers to purchase or use the product and services.  On information and belief, Whatfix's customers have purchased and used the infringing product and services.

42.     On information and belief, Whatfix directly communicates with consumers with the intent to have them use the infringing web-based platform and chatbot feature.  Whatfix was aware of and knew about WalkMe's '664 Patent no later than December 15, 2022, the date WalkMe's counsel caused correspondence to be delivered to Whatfix's Legal Department, notifying Whatfix of its infringement of the '664 Patent.  Whatfix therefore knowingly induced infringement and possessed specific intent to encourage another's infringement of WalkMe's '664 Patent.

43.     On information and belief, Whatfix, without authority, has contributorily infringed and continues to contributorily infringe, at least claims 1-9, 14, 18, 20-23, 28, 29, and 33 of the '664 Patent under 35 U.S.C. § 271(c), by making, offering to sell and/or selling within the United States, and/or importing into the United States, one or more components of its web-based platform and chatbot feature covered by the '664 Patent.  Such components constitute a material part of WalkMe's invention.  Whatfix was aware of and knew about WalkMe's patented

12

invention no later than December 15, 2022, the date WalkMe's counsel caused correspondence to be delivered to Whatfix regarding Whatfix's infringement of the '664 Patent.

44.     Whatfix's web-based platform, chatbot feature, and its constituent components have no substantial non-infringing use.  Whatfix knows that its web-based platform and chatbot feature, and any associated components, are made or especially adapted for use in connection with the creation of infringing automated processes, and are not a staple article or commodity of commerce suitable for substantial noninfringing use.

45.     On information and belief, Whatfix had actual notice of the '664 Patent before the filing of this complaint, but no later than December 15, 2022.  On information and belief, Whatfix has nevertheless directly and indirectly infringed the '664 Patent, despite a high likelihood that its actions constitute infringement of the '664 Patent.  Further, Whatfix's actions were egregious in that it acted deliberately, in bad-faith, and was consciously wrongful in its actions.  Accordingly, upon information and belief, Whatfix's infringement has been and continues to be willful.

## SECOND CAUSE OF ACTION
### (Infringement of the '732 Patent)

46.     WalkMe incorporates and re-alleges Paragraphs 1 through 45 as if fully set forth and stated herein.

47.     The '732 Patent is valid and enforceable.

48.     WalkMe owns the entire right, title, and interest in and to the '732 Patent, including the right to sue and recover damages, including damages for past infringement.

49.     In violation of 35 U.S.C. § 271, Whatfix has infringed and continues to infringe the '732 Patent, literally and/or under the doctrine of equivalents, by making, using, offering for

sale, and/or selling in this judicial district and elsewhere in the United States, its web-based platform and chatbot feature.

50.     Whatfix offers a web-based platform and chatbot feature that fall within the scope, and practice each and every limitation, of at least claims 1 and 9-11 of the '732 Patent. Attached as Exhibit G is an exemplary claim chart demonstrating Whatfix's infringement of at least claim 11 of the '732 patent.

51.     For example, Whatfix enables invocation of Whatfix content, including Whatfix flow, in response to chatbot queries.  (*See* Exs. D, G).  The chatbots implement a natural language interface, as shown below, for example:



Ex. D.



Ex. G.

52.     Whatfix instructs defining a conversation and states that its chatbot can "ask questions in a conversational manner" using inputs from a user that can be used to "complete the task" as shown below, for example:

14

**Use cases**

- Users can interact with the bot, and based on the inputs provided, the bot presents them with the most relevant Flows. When users click a Flow, the process is automatically completed for them.
- When certain information is required from the user before or while performing a task, the bot can be used to ask questions in a conversational manner, and the inputs thus garnered can be used to complete the task.

Ex. D; *see also* Ex. G.

      53.    Whatfix associates a conversation with the automation process by providing a

Flow URL to the conversation to cause the execution of the automation process, as shown below,

for example:



| Field | Description |
|-------|-------------|
| Name | Name that describes what the block is |
| Header | The header displayed at the top of the bot response bubble that contains the URL. This info is visible to the users. |
| URL | The URL link to the location displayed to the user in a bot response. We will add the Flow URL here. |

*Id.*

> ❶ Info:
> - To make this work, you have to add Whatfix Flow URLs in the appropriate bot responses. No other integration is required.

*Id.*

54.     Whatfix provides flows that simulate user interactions with the displayed user interface, including by inputting data and executing functionalities of the target application (e.g., by clicking, hovering, or selecting), as shown below, for example:



*   **Auto Click** - Use this option when the step completion rule involves a click. When this option is selected, the element is clicked and proceeds to the next step in the Flow.
*   **Auto Hover** - Use this option when the step completion rule involves a mouse hover. When this option is selected, a mouse hover action is performed, and the Flow proceeds to the next step.
*   **Auto Input** - Use this option to auto-populate an input field with a predetermined value.

*Id*.

55.     Whatfix touts the usefulness of receiving input from the user to decide on the flow and to get input that is utilized to compete an automated task or a parameterized automation process, as shown below, for example:

## Use cases

*   Users can interact with the bot, and based on the inputs provided, the bot presents them with the most relevant Flows. When users click a Flow, the process is automatically completed for them.
*   When certain information is required from the user before or while performing a task, the bot can be used to ask questions in a conversational manner, and the inputs thus garnered can be used to complete the task.

Ex. D; *see also* Ex. G.

56.     Whatfix allows its users that define the conversation to activate the topic flow, thereby publishing the conversation to be accessible to a user via a natural language interface, as shown below, for example:

16



*Id.*; *see also* Exhibit I (screenshot of Whatfix Support for Chatbots).

57.    Whatfix's web-based platform and chatbot features are further configured to get values from the user to perform automated tasks with user-provided inputs, as shown below, for example:

**Accessing the chatbot**

You can have it as a regular chatbot interface in your app, or integrate the chatbot with the Self Help widget for users to interact with it through Self Help.

**Use cases**

- Users can interact with the bot, and based on the inputs provided, the bot presents them with the most relevant Flows. When users click a Flow, the process is automatically completed for them.
- When certain information is required from the user before or while performing a task, the bot can be used to ask questions in a conversational manner, and the inputs thus garnered can be used to complete the task.

Didn't find what you were looking for? We'd love to hear from you. Write to **infodev@whatfix.com**

Ex. D.

58.    On information and belief, Whatfix, without authority, has actively induced and continues to actively induce infringement of at least claims 1 and 9-11of the '732 Patent under 35 U.S.C. § 271(b).  Whatfix has, among other things, instructed others to use its web-based platform and chatbot feature within the United States that infringe at least claims 1 and 11 of the '732 Patent.

59.    On information and belief, Whatfix is aware of its infringement of the '732 Patent and has had a specific intent to infringe and encourage others to infringe the '732 Patent.

60.    On information and belief, Whatfix has contacted and solicited potential customers regarding its web-based platform and chatbot feature on its website, with an intent to

encourage those potential customers to purchase or use the product and services.  On information and belief, Whatfix's customers have purchased and used the infringing product and services.

61.     On information and belief, Whatfix directly communicates with consumers with the intent to have them use the infringing web-based platform and chatbot feature.  Whatfix was aware of and knew about WalkMe's '732 Patent no later than December 15, 2022, the date WalkMe's counsel caused correspondence to be delivered to Whatfix's Legal Department, notifying Whatfix of its infringement of the '732 Patent.  Whatfix therefore knowingly induced infringement and possessed specific intent to encourage another's infringement of WalkMe's '732 Patent.

62.     On information and belief, Whatfix, without authority, has contributorily infringed and continues to contributorily infringe, at least claims 1 and 9-11 of the '732 Patent under 35 U.S.C. § 271(c), by making, offering to sell and/or selling within the United States, and/or importing into the United States, one or more components of its web-based platform and chatbot feature covered by the '732 Patent.  Such components constitute a material part of WalkMe's invention.  Whatfix was aware of and knew about WalkMe's patented invention no later than December 15, 2022, the date WalkMe's counsel caused correspondence to be delivered to Whatfix regarding Whatfix's infringement of the '732 Patent.

63.     Whatfix's web-based platform, chatbot feature, and its constituent components have no substantial non-infringing use.  Whatfix knows that its web-based platform and chatbot feature, and any associated components, are made or especially adapted for use in connection with the creation of infringing automated processes and are not a staple article or commodity of commerce suitable for substantial noninfringing use.

18

64.     On information and belief, Whatfix had actual notice of the '732 Patent before the filing of this complaint, but no later than December 15, 2022.  On information and belief, Whatfix has nevertheless directly and indirectly infringed the '732 Patent, despite a high likelihood that its actions constitute infringement of the '732 Patent.  Further, Whatfix's actions were egregious in that it acted deliberately, in bad-faith, and was consciously wrongful in its actions.  Accordingly, upon information and belief, Whatfix's infringement has been and continues to be willful.

65.     WalkMe has suffered, and will suffer, irreparable injury unless Whatfix is enjoined from infringing, inducing infringement of, and/or contributing to the infringement of the '732 patent.

66.     WalkMe has no adequate remedy at law.

67.     WalkMe has suffered, and will suffer, damages as a result of Whatfix's infringement, inducing infringement, and/or contributory infringement of the '732 patent.

### THIRD CAUSE OF ACTION
### (Infringement of the '317 Patent)

68.     WalkMe incorporates and re-alleges Paragraphs 1 through 67 as if fully set forth and stated herein.

69.     The '317 Patent is valid and enforceable.

70.     WalkMe owns the entire right, title, and interest in and to the '317 Patent, including the right to sue and recover damages, including damages for past infringement.

71.     In violation of 35 U.S.C. § 271, Whatfix has infringed and continues to infringe the '317 Patent, literally and/or under the doctrine of equivalents, by making, using, offering for sale, and/or selling in this judicial district and elsewhere in the United States, its web-based platform and Chatbot.

19

72.      Whatfix offers a chatbot feature that falls within the scope, and practice each and every limitation, of at least claims 1, 2, 8, 10, 15, and 20 of the '317 Patent.  Attached as Exhibit H is an exemplary claim chart demonstrating Whatfix's infringement of at least claim 1 of the '317 patent.

73.      For example, Whatfix offers integration of its content with a chatbot service, capable of receiving user instruction from a natural language interface, as shown below, for example:



Ex. D.



Ex. H.

74.     In response to a user's instruction, Whatfix can select and implement an automation process, using information that was collected from the user, as shown below, for example:

**Accessing the chatbot**

You can have it as a regular chatbot interface in your app, or integrate the chatbot with the Self Help widget for users to interact with it through Self Help.

**Use cases**

- Users can interact with the bot, and based on the inputs provided, the bot presents them with the most relevant Flows. When users click a Flow, the process is automatically completed for them.
- When certain information is required from the user before or while performing a task, the bot can be used to ask questions in a conversational manner, and the inputs thus garnered can be used to complete the task.

Didn't find what you were looking for? We'd love to hear from you. Write to **infodev@whatfix.com**

Ex. D; *see also* Ex. H.



*Id.*

75.    Whatfix further provides Flows that simulate user interactions with a Graphical User Interface (GUI) by simulating user input to the GUI (e.g., by clicking, hovering, or selecting), as shown below, for example:



*Id*.

76.    Whatfix's web-based platform and chatbot feature does not rely on an API. Instead, Whatfix relies on user interface, and simulates interaction therewith.  Whatfix's documentation explains that the user interface can cause broken Flows and require the user to reselect the broken element, as demonstrated below, for example:

### Reselect Elements to manage UI changes

Updated On 23 Feb 2023 • 1 Minute To Read                                    Print   Share   Dark   PDF

Whatfix enables you to manage changes in your UI so you don't have to recreate the respective Flow every time your application undergoes a change. If your Flow is broken because one of your steps in the Flow has changed, you can quickly make it work again using the following information.

22

5. Click **Reselect element**.



6. Select the element on your application.

*Id*.

77.     Whatfix's web-based platform and chatbot features further enable automatic input to populate text fields without user input and can perform a predefined function, such as automatically clicking without user input, as shown below, for example:



*Id*.

23



- **Auto Click** - Use this option when the step completion rule involves a click. When this option is selected, the element is clicked and proceeds to the next step in the Flow.

*Id*.

78.     On information and belief, Whatfix, without authority, has actively induced and continues to actively induce infringement of at least claims 1, 2, 8, 10, 15, and 20 of the '317 Patent under 35 U.S.C. § 271(b).  Whatfix has, among other things, instructed others to use its web-based platform and chatbot feature within the United States that infringe at least claim 1 of the '317 Patent.

79.     On information and belief, Whatfix is aware of its infringement of the '317 Patent and has had a specific intent to infringe and encourage others to infringe the '317 Patent.

80.     On information and belief, Whatfix has contacted and solicited potential customers regarding its web-based platform and chatbot feature on its website, with an intent to encourage those potential customers to purchase or use the product and services.  On information and belief, Whatfix's customers have purchased and used the infringing product and services.

81.     On information and belief, Whatfix directly communicates with consumers with the intent to have them use the infringing web-based platform and chatbot feature.  Whatfix was aware of and knew about the allowance of the patent application (U.S. Patent Pub. No. 2022/0150251) that issued as WalkMe's '317 Patent no later than December 15, 2022, the date WalkMe's counsel caused correspondence to be delivered to Whatfix's Legal Department,

24

notifying Whatfix of its infringement of the related '664 and '732 patents.  Whatfix therefore knowingly induced infringement and possessed specific intent to encourage another's infringement of WalkMe's '317 Patent.

82.    On information and belief, Whatfix, without authority, has contributorily infringed and continues to contributorily infringe, at least claims 1, 2, 8, 10, 15, and 20 of the '317 Patent under 35 U.S.C. § 271(c), by making, offering to sell and/or selling within the United States, and/or importing into the United States, one or more components of its web-based platform and chatbot feature covered by the '317 Patent.  Such components constitute a material part of WalkMe's invention.  Whatfix was aware of and knew about the allowed claims of WalkMe's patent no later than December 15, 2022, the date WalkMe's counsel caused correspondence to be delivered to Whatfix regarding Whatfix's infringement of the related '664 and '732 patents, and of the allowance of the application that issued as the '317 Patent.

83.    Whatfix's web-based platform, chatbot feature, and its constituent components have no substantial non-infringing use.  Whatfix knows that its web-based platform and chatbot feature, and any associated components, are made or especially adapted for use in connection with the creation of infringing automated processes and are not a staple article or commodity of commerce suitable for substantial noninfringing use.

84.    On information and belief, Whatfix had actual notice of the allowed patent application that issued as the '317 Patent before the filing of this complaint, but no later than December 15, 2022.  On information and belief, Whatfix has nevertheless directly and indirectly infringed the '317 Patent, despite a high likelihood that its actions constitute infringement of the '317 Patent.  Further, Whatfix's actions were egregious in that it acted deliberately, in bad-faith,

and was consciously wrongful in its actions.  Accordingly, upon information and belief, Whatfix's infringement has been and continues to be willful.

85.     WalkMe has suffered, and will suffer, irreparable injury unless Whatfix is enjoined from infringing, inducing infringement of, and/or contributing to the infringement of the '317 patent.

86.     WalkMe has no adequate remedy at law.

87.     WalkMe has suffered, and will suffer, damages as a result of Whatfix's infringement, inducing infringement, and/or contributory infringement of the '317 patent.

### **JURY TRIAL DEMAND**

88.     WalkMe, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable.

### **PRAYER FOR RELIEF**

WHEREFORE, WalkMe respectfully requests that the Court enter the following relief:

a.     A judgment that Whatfix has infringed, directly or indirectly, the '664 Patent, '732 Patent, and '317 Patent;

b.     A judgment that Whatfix's infringement of the '664 Patent, '732 Patent, and '317 Patent is willful;

c.     A permanent injunction prohibiting Whatfix, its officers, employees, agents, servants, attorneys, successors, and assigns, and all others in active concert or participation with them or under their authority, from making, using, offering for sale, selling, and/or importing into the United States productds or methods that directly or indirectly infringe the '664 Patent, '732 Patent, and '317 Patent;

26

d.      An award of damages to compensate WalkMe for Whatfix's infringement of the '664 Patent, '732 Patent, and '317 Patent, including, but not limited to, damages and/or other monetary relief (including enhanced damages) pursuant to 35 U.S.C. § 284;

e.      A finding that this case is exceptional pursuant to 35 U.S.C. § 285, and an award of WalkMe's costs, reasonable attorneys' fees, expenses, and such other relief as the Court deems just and proper; and

f.      Any further relief that this Court deems just and proper.

Dated: March 1, 2023

**OF COUNSEL**

Leon Medzhibovsky (*Pro Hac Vice* pending)
Matthew Ganas (*Pro Hac Vice* pending)
**DLA PIPER LLP (US)**
1251 Avenue of the Americas
27th Floor
New York, NY 10020-1104
Telephone: (212) 335-4500
leon.medzhibovsky@us.dlapiper.com
Matt.Ganas@us.dlapiper.com

**DLA PIPER LLP (US)**

*/s/ Brian A. Biggs*
Brian A. Biggs (DE Bar No. 5591)
Erin E. Larson (DE Bar No. 6616)
1201 North Market Street
Suite 2100
Wilmington, DE 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
brian.biggs@us.dlapiper.com
erin.larson@us.dlapiepr.com

*Attorneys for Plaintiff WalkMe Ltd.*