# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WALKME LTD., <br><br> *Plaintiff*, <br><br> v. <br><br> WHATFIX INC., <br><br> *Defendant*. | C.A. No. 23-227-MN |

### WHATFIX INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO CONTINUE STAY FOR THE DURATION OF ITS APPEALS

OF COUNSEL:

John R. Lanham
MORRISON & FOERSTER LLP
12531 High Bluff Drive
San Diego, CA 92130
jlanham@mofo.com

Bita Rahebi
Nima I. Kiaei
MORRISON & FOERSTER LLP
707 Wilshire Blvd.
Los Angeles, CA 90017
(213) 892-5200
brahebi@mofo.com
nkiaei@mofo.com

Dated: April 18, 2025

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com

*Attorneys for Defendant Whatfix Inc.*

**TABLE OF CONTENTS**

NATURE AND STAGE OF THE PROCEEDINGS ........................................................... 1

SUMMARY OF ARGUMENT ........................................................................................... 2

STATEMENT OF FACTS .................................................................................................. 3

I.     LEGAL STANDARD ............................................................................................. 5

II.    ARGUMENT ........................................................................................................... 6

        A.     Continuing the Stay Pending Decisions in Whatfix's Appeals to the Federal Circuit Will Likely Simplify the Issues in this Case ....................... 6

        B.     The Early Stage of the Litigation Favors Continuing the Stay .................. 10

        C.     A Continued Stay Will Not Cause WalkMe Undue Prejudice or Clear Tactical Disadvantage .............................................................................. 11

III.   CONCLUSION ..................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Boston Sci. Corp. v. Cook Grp. Incorp.*,
   No. 1:17-CV-3448-JS-MJD, 2019 WL 2511162 (S.D. Ind. June 17, 2019) ............................6

*DDR Holdings, LLC v. Priceline.com LLC*,
   No. 17-498-CFC, D.I. 101 (D. Del. Jan. 19, 2021)................................................................5, 11

*Ethicon LLC v. Intuitive Surgical, Inc.*,
   No. 17-871-LPS, 2019 WL 1276029 (D. Del. Mar. 20, 2019)............................................5, 11

*Ethicon, Inc. v. Quigg*,
   849 F.2d 1422 (Fed. Cir. 1988)................................................................................................5

*IBM Corp. v. Zynga Inc.*,
   No. 22-590-GBW, 2023 WL 8275938 (D. Del. Nov. 30, 2023) ..........................5, 7, 9, 10, 11

*Int'l Bus. Machs. Corp. v. Rakuten, Inc.*,
   680 F.Supp.3d 531 (D. Del. 2023)............................................................................................5

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
   No. 18-452-WCB, 2019 WL 3943058 (D. Del. Aug. 21, 2019) .............................................10

*Murata Mach. USA v. Daifuku Co.*,
   830 F.3d 1357 (Fed. Cir. 2016)................................................................................................5

*Novartis AG v. HEC Pharm Co. Ltd.*,
   183 F. Supp. 3d 560 (D. Del. 2016)......................................................................................5, 6

*Personal Genomics Taiwan, Inc. v. Pacific Biosciences of California, Inc.*,
   No. 19-1810-GBW-MPT, 2022 WL 4245532 (D. Del. Sept. 15, 2022) ...............5, 6, 7, 10, 11

*Puget BioVentures, LLC v. Med. Device Bus. Servs., Inc.*,
   No. 3:17-CV-503, 2017 WL 6947786 (N.D. Ind. Sept. 22, 2017) ...........................................6

*Straight Path IP Grp., Inc. v. Verizon Comms. Inc.*,
   No. 16-CV-4236, 2016 WL 6094114 (S.D.N.Y Oct. 18, 2016)...............................................5

*Volvo Penta of the Americas, LLC, v. Brunswick Corp.*,
   No. 20-CV-01678-GBW, D.I. 29 (D. Del. Sept. 16, 2022) ......................................................5

*Willis Elect. Co., LTD. v. Polygroup Limited*,
   No. 15-CV-3443, 2018 WL 11420009 (D. Minn. July 16, 2018) ............................................6

**Statutes**

35 U.S.C.
 § 101 ................................................................................................................................. 3
 § 103 ................................................................................................................................. 3
 § 314 ................................................................................................................................. 4
 § 315(b) ............................................................................................................................ 3

**Other Authorities**

Fed. R. Civ. Proc. Rule 26 ............................................................................................................ 4

## NATURE AND STAGE OF THE PROCEEDINGS

Defendant Whatfix Inc. ("Whatfix") submits this motion in the event the Court does not grant the parties' Stipulation and Joint Motion Regarding Stay (D.I. 57).

WalkMe Ltd. ("WalkMe") sued Whatfix for patent infringement. By stipulation and an accompanying order dated February 9, 2024, the Court approved the parties' agreement to stay proceedings in this case pending resolution of various *inter partes* review ("IPR") proceedings before the Patent Trial and Appeal Board ("PTAB"). *See generally* D.I. 52 (hereinafter "Stay Order"). These IPR proceedings involved all presently asserted claims of U.S. Patent Nos. 10,819,664, 11,258,732, and 11,558,317 (collectively, the "Asserted Patents") and a number of unasserted claims.

By March 28, 2025, the PTAB issued final written decisions in all IPR proceedings. The PTAB found all independent and certain dependent claims of the '664 patent unpatentable. D.I. 56-1 at 2. The PTAB also found certain dependent claims of the '664 patent and the challenged claims of the '732 patent and '317 patent not unpatentable. *See* D.I. 56-1 at 2; D.I. 56-2 at 2; D.I. 56-3 at 2. The status of these PTAB proceedings is summarized below:

| WalkMe Patent | IPR No. | Challenged Claims | Status of PTAB Proceeding |
|---|---|---|---|
| 10,819,664 | IPR2023-01368 | 1-9, 12-16, 18-23, 25, 26, 28-31, and 33 | Final written decision issued on March 18, 2025 upholding claims 9, 14, 15, 18, 25, 28, 30, and 33; and invalidating claims 1-8, 12, 13, 16, 19-23, 26, 29, and 31. D.I. 56 at 2; D.I. 56-1 at 2. |
| 11,258,732 | IPR2023-01379 | 1-6, 9-16, and 18-21 | Final written decision issued on March 18, 2025 upholding all challenged claims. D.I. 56 at 2; D.I. 56-2 at 2. |
| 11,558,317 | IPR2024-00065 | 1-20 | Final written decision issued on March 28, 2025 upholding all challenged claims. D.I. 56 at 2; D.I. 56-3 at 2. |

Whatfix notified WalkMe that it plans to appeal the PTAB's decisions regarding the challenged claims of the Asserted Patents that the PTAB did not find unpatentable. Whatfix now

moves to maintain the stay pending resolution of its forthcoming appeals. The parties met and conferred regarding this motion on April 18, 2025. WalkMe indicated it would oppose.

## SUMMARY OF ARGUMENT

1. A continued stay for the duration of Whatfix's appeals will simplify this case by reducing or at least clarifying the issues that this Court would otherwise address. The Federal Circuit's affirmance or reversal of the PTAB's factual findings or legal conclusions may affect the present litigation. Extending the stay would also avoid potentially inefficient or unnecessary fact and expert discovery if Whatfix were to prevail in whole or in part in its appeals in the midst of ongoing litigation.

2. The very early stage of litigation favors continuing the stay. The parties have exchanged no discovery beyond initial and ESI disclosures, no claim construction has occurred, expert discovery has not begun, and a new trial date has not yet been set. A decision on Whatfix's appeals would likely arrive in the midst of pretrial preparations if the stay were lifted now. This could necessitate a costly and inefficient re-do of fact and expert depositions, document discovery, expert reports, dispositive motions, and pretrial statements, and potentially upend trial.

3. Continuing the stay would not unduly prejudice WalkMe or impose tactical disadvantage. WalkMe chose not to seek a preliminary injunction or oppose the present stay, which has remained in place during the pendency of the IPR proceedings. Damages thus would be sufficient to compensate for any alleged infringement during the stay. And there is no tactical disadvantage imposed. Whatfix began filing its IPRs as soon as practicable within six months of the complaint being filed—well before the statutory bar date—and is promptly seeking appellate review.

## STATEMENT OF FACTS

WalkMe filed its patent infringement lawsuit against Whatfix on March 1, 2023, alleging infringement of the Asserted Patents. D.I. 1. The Asserted Patents are directed generally to "automation of computer programs and processes based on user input through chat-based application interfaces." D.I. 1 ¶ 15. Whatfix timely moved to dismiss the complaint on the basis that the patent claims are directed to patent-ineligible subject matter under 35 U.S.C. § 101. D.I. 9. Before the Court could decide that motion, WalkMe filed a first amended complaint on May 30, 2023 alleging infringement of the same patents, rendering Whatfix's motion moot. D.I. 13; D.I. 14. WalkMe did not plead preliminary or interim injunctive relief, *see* D.I. 13 at 37-38, and did not file a motion for preliminary injunction. On June 20, 2023, Whatfix again moved to dismiss WalkMe's first amended complaint on § 101 grounds. D.I. 17. On October 19, 2023, the Court denied Whatfix's motion to dismiss without prejudice to renewal at summary judgment. D.I. 27. On November 21, 2023, the Court entered a scheduling order setting trial for November 3, 2025, approximately 23 months later.

***Whatfix promptly challenged the patentability of all Asserted Claims in IPRs.*** WalkMe's first amended complaint alleges infringement of claims 1-9, 14, 18, 20-23, 28, 29, and 33 of U.S. Patent No. 10,819,664; claims 1 and 9-11 of U.S. Patent No. 11,258,732; and claims 1, 2, 8, 10, 15, and 20 of U.S. Patent No. 11,558,317 (collectively, the "Asserted Claims"). D.I. 13 ¶¶ 56, 73, 95. Between August and October 2023, well before the statutory bar date under 35 U.S.C. § 315(b) and before the Court entered its scheduling order, Whatfix filed four IPR petitions challenging all Asserted Claims—and some unasserted claims—as invalid for obviousness under 35 U.S.C. § 103. D.I. 51 at 1-2; D.I. 51-1; D.I. 51-2; D.I. 51-3; D.I. 51-4. The parties agreed to stay proceedings pending resolution of the IPR petitions on Feb. 9, 2024. D.I. 50. The Court entered its Stay Order the same day. D.I. 52. On April 5, 2024, the parties informed the Court that the PTAB instituted

– 3 –

the three IPRs directed to the Asserted Claims and exercised its discretion under 35 U.S.C. § 314 to deny institution of the fourth IPR.  *See* D.I. 54 and exhibits thereto.

***This case remains in its earliest stages.***  The only discovery the parties have exchanged is their December 2023 Rule 26 initial disclosures (*see* D.I. 36, 37) and their January 2024 ESI disclosures (*see* D.I. 47, 48).  The parties have not yet exchanged initial discovery pursuant to the Default Standard for Discovery.  *See* D.I. 34 ¶ 6; D.I. 49 (extending deadlines for such discovery).  The parties have not served any written discovery requests or produced any documents.  No depositions have been taken or scheduled.  Claim construction issue identification and briefing have not yet occurred, nor has expert discovery begun.  The case remains in its infancy.

***The Patent Trial and Appeal Board found many of the Asserted Claims unpatentable.***

The PTAB issued final written decisions in IPR2023-01368 and IPR2023-01379 on March 18, 2025, and a final written decision in IPR2024-00065 on March 28, 2025.  On April 2, 2025, the parties jointly informed the Court of these outcomes.  D.I. 56.  In addition to six presently unasserted claims, the PTAB invalidated 13 out of 28 Asserted Claims—nearly half of the Asserted Claims:

| WalkMe Patent | IPR No. | Asserted Claims Held Unpatentable by PTAB | Asserted Claims Not Held Unpatentable by PTAB |
|---|---|---|---|
| 10,819,664 | IPR2023-01368 | 1-8, 20-23, and 29 (D.I. 56-1 at 2) | 9, 14, 18, 28, and 33 (D.I. 56-1 at 2) |
| 11,258,732 | IPR2023-01379 | N/A | 1, 9-11 (D.I. 56-2 at 2) |
| 11,558,317 | IPR2024-00065 | N/A | 1, 2, 8, 10, 15, 20 (D.I. 56-3 at 2) |

***Whatfix will appeal the PTAB's final written decisions.***  Whatfix plans to file appeals of two of the PTAB's final written decisions by May 20, 2025 and its appeal of the third final written decision by May 30, 2025.  A Federal Circuit ruling in Whatfix's favor would result in a reversal of the PTAB's decisions on patentability for all remaining asserted claims that have not already

been found unpatentable. Even if not entirely in Whatfix's favor, a Federal Circuit ruling is also likely to be probative as to the scope of any surviving claims.

## I. LEGAL STANDARD

This Court has broad discretion to stay litigation. *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988) (citing *Landis v. North American Co.,* 299 U.S. 248, 254 (1936)); *Int'l Bus. Machs. Corp. v. Rakuten, Inc.*, 680 F.Supp.3d 531, 534 (D. Del. 2023). Courts typically consider three factors in evaluating a request to stay: (1) whether granting the stay would simplify the issues in question and the trial of the case; (2) the status of the district court litigation, particularly whether discovery is complete and a trial date has been set; and (3) whether the stay would cause the nonmovant to suffer undue prejudice or allow the movant to gain a clear tactical advantage. *Murata Mach. USA v. Daifuku Co.*, 830 F.3d 1357, 1361 (Fed. Cir. 2016); *Ethicon LLC v. Intuitive Surgical, Inc.*, No. 17-871-LPS, 2019 WL 1276029, at *2 (D. Del. Mar. 20, 2019). These same factors govern whether to extend the stay pending an appeal to the Federal Circuit after the PTAB has issued its final written decision in an IPR proceeding. *IBM Corp. v. Zynga Inc.*, No. 22-590-GBW, 2023 WL 8275938, at *1 (D. Del. Nov. 30, 2023).

Courts in this District "routinely stay[] cases after institution and keep[] them stayed until after a Federal Circuit appeal has concluded." *Id.* at *2; *see, e.g.*, *Personal Genomics Taiwan, Inc. v. Pacific Biosciences of California, Inc.*, No. 19-1810-GBW-MPT, 2022 WL 4245532, at *2 (D. Del. Sept. 15, 2022); *Volvo Penta of the Americas, LLC, v. Brunswick Corp.*, No. 20-CV-01678-GBW, D.I. 29 (D. Del. Sept. 16, 2022); *DDR Holdings, LLC v. Priceline.com LLC*, No. 17-498-CFC, D.I. 101 (D. Del. Jan. 19, 2021); *Novartis AG v. HEC Pharm Co. Ltd.*, 183 F. Supp. 3d 560, 562 (D. Del. 2016). So do courts in many other districts. *See, e.g.*, *Straight Path IP Grp., Inc. v. Verizon Comms. Inc.*, No. 16-CV-4236, 2016 WL 6094114, at *2-4 (S.D.N.Y Oct. 18, 2016);

*Puget BioVentures, LLC v. Med. Device Bus. Servs., Inc.*, No. 3:17-CV-503, 2017 WL 6947786, at *2-4 (N.D. Ind. Sept. 22, 2017); *Willis Elect. Co., LTD. v. Polygroup Limited*, No. 15-CV-3443, 2018 WL 11420009, at *2 (D. Minn. July 16, 2018); *Boston Sci. Corp. v. Cook Grp. Incorp.*, No. 1:17-CV-3448-JS-MJD, 2019 WL 2511162, at *2-3 (S.D. Ind. June 17, 2019).

**II.     ARGUMENT**

The Court should continue the present stay based on (1) Whatfix's forthcoming appeals, which seek to reverse the PTAB's decisions as to remaining claims that have not already been declared unpatentable; (2) the very early stage of the litigation, in which discovery has not meaningfully commenced; and (3) the absence of undue prejudice or loss of advantage to WalkMe from maintaining the stay until the unpatentability issues raised in the IPRs are resolved.

**A.     Continuing the Stay Pending Decisions in Whatfix's Appeals to the Federal Circuit Will Likely Simplify the Issues in this Case**

The Court and the parties should not expend resources litigating patent claims whose patentability is on appeal at the Federal Circuit. *Novartis AG v. HEC Pharm Co. Ltd.*, 183 F. Supp. 3d 560, 562 (D. Del. 2016) (continuing stay where "it would be complicated and potentially wasteful for the Court to litigate [the asserted patent] at the same time as the Federal Circuit is reviewing its validity"). If the Federal Circuit reverses the PTAB's patentability decisions as to the remaining Asserted Claims, this litigation is over. On the other hand, if the Federal Circuit affirms some or all of the PTAB's findings with respect to those claims, its decision would provide guidance to the Court and the parties regarding claim construction and invalidity issues for the surviving claims. Either outcome would simplify the issues in this case and conserve the resources of the parties and the Court.

*Personal Genomics* is instructive. 2022 WL 4245532 (D. Del. Sept. 15, 2022). There, the PTAB held approximately half the asserted claims—23 out of 51—unpatentable. *Id.* at *1. The

defendant, PacBio, moved to continue the stay pending its appeal of the PTAB's final written decisions as to the other 28 claims. *Id.* The court held that the Federal Circuit's decision "will likely affect claim construction, fact discovery, and expert discovery" and that judicial efficiency would be served by avoiding parallel proceedings. *Id.* The court thus continued the stay pending the outcome of the appeal. *Id.*; *see also IBM*, 2023 WL 8275938, at *2 (continuing stay during appeal where PTAB had found seven asserted claims unpatentable and four patentable).

Here, the Asserted Patents all come from the same family and share a common specification. D.I. 56-3 at 4 (identifying the Asserted Patents as related patents issued from a series of continuation applications). The PTAB has already declared all the independent claims of the '664 patent—and a majority of the challenged dependent claims—unpatentable. D.I. 56-1 at 2. The PTAB erred in its decision on the handful of surviving depending claims, and the Federal Circuit will likely reverse. Even if the Federal Circuit does not entirely reverse, its guidance on the construction and scope of those claims will aid the Court and the parties in litigating infringement and validity. *Personal* Genomics, 2022 WL 4245532, at *2 (D. Del. Sept. 15, 2022) ("Judicial efficiencies would be gained by staying this case rather than have this Court and the Federal Circuit address [claim construction] in parallel."). If the Court were to lift the stay now, it would lose the benefit of this guidance.

Moreover, the scope of the unpatentable claims of the '664 patent overlaps significantly with those in the asserted claims of the '732 and '317 patents. For example, independent claim 1 of the '664 patent—which the PTAB found unpatentable—shares limitations with independent claim 1 of the '732 and '317 patents. It provides (D.I. 13-1 at 30):

> 1. A method comprising:
>
> using a natural language interface, receiving input from a user as part of a natural language conversation between the natural language interface and the user, wherein the natural language

> conversation comprises a first natural language input from the user, a natural language feedback on the first natural language input from the natural language interface, and a second natural language input from the user in response to the natural language feedback:
>
> determining, based on the first and second natural language inputs from the user, an automation process configured to perform an automation of a sequence of interactions with a displayed user interface of a computer program and to simulate user interactions with the displayed user interface of the computer program, wherein the user interface of the computer program is configured to be displayed on a screen, wherein each interaction of the sequence of interactions comprises an action selected from a group consisting of inputting data to the displayed user interface and executing a functionality of the displayed user interface; and
>
> executing the automation process, wherein said executing comprises utilizing the displayed user interface of the computer program to perform the sequence of interactions.

Claim 1 of the '732 patent (D.I. 13-2 at 28) similarly claims such a method:

> 1. A method for defining an automation process, wherein the automation process is configured to be invoked in response to a conversation of a user with a natural language interface, the method comprising:
>
> defining a conversation to be implemented by a natural language interface, wherein the conversation is configured to obtain from the user one or more values to one or more parameters associated with the automation process;
>
> associating the conversation with the automation process, wherein the automation process is configured to utilize a displayed user interface of a computer program to simulate sequence of interactions with the displayed user interface of the computer program and execute a functionality of the computer program, wherein the automation process is a parameterized automation process depending on the one or more parameters; and
>
> publishing the conversation to be accessible to a user via the natural language interface, wherein the user is enabled to interact with the natural language interface in accordance with the conversation, whereby the parameterized automation process is invoked automatically by the natural language interface and using one or more values provided by the user to the natural language interface for the one or more parameters.

And claim 1 of the '317 patent (D.I. 13-3 at 30) claims a product practicing a similar method:

> 1. A chat-bot program product, wherein the chat-bot program product comprises non-transitory computer readable medium retaining program instructions, which program instructions when read by a processor, cause the processor to:
>
> receive a user instruction from a user using a natural language interface;
>
> determine to implement an automation process on a web-based target system in response to the user instruction;
>
> collect information to be used as part of the automation process; and
>
> implement the automation process by interacting with a Graphical User Interface (GUI) of the web-based target system and simulating user input to the GUI of the web-based target system, wherein the automation process is performed with respect to third-party web-based target system and without relying on an Application Programming Interface (API) exposed by the web-based target system, wherein the implementation of the automatic process comprises:
>
>> automatically and without user input, filling in a text input field in the GUI of the web-based target system; and
>>
>> automatically and without user input, interacting with a widget in the GUI to cause the web-based target system to perform a predefined functionality.

As a result, reversal of the PTAB's error for the claims of the '664 patent it found not unpatentable would also likely result in reversal of this error for the claims of the '732 and '317 patents. Maintaining the present stay would allow the parties to benefit from the Federal Circuit's patentability analysis, avoid duplicative fact and expert discovery, and prevent issuance of a potentially inconsistent claim construction ruling by the Court. The possibility of issue simplification, particularly at an early stage in the litigation, "is compelling to warrant a stay" of litigation during appeal of an IPR decision. *IBM*, 2023 WL 8275938, at *3. This factor thus weighs in favor of continuing the stay.

### B. The Early Stage of the Litigation Favors Continuing the Stay

The very early stage of this litigation also favors a stay. Indeed, courts in this District give greater weight to this factor when cases are at such an early stage at the time of appeal. In *Personal Genomics*, for example, the court continued a stay during appeal where fact discovery was "in its early stages," "no deposition ha[d] been taken," and "[c]laim construction briefing [was] complete but no *Markman* hearing date ha[d] been set." 2022 WL 4245532, at *2. The court contrasted these circumstances with a stay denial in another case that was only a month from trial. *Id.* at *2. Similarly, in *IBM*, the court continued such a stay where "fact discovery [was] ongoing (indeed, only one deposition ha[d] been taken), expert discovery ha[d] not yet begun, and dispositive motions and trial preparation ha[d] yet to begin." 2023 WL 8275938, at *2. Here, in part due to Whatfix's promptness in filing its IPRs as soon as practicable, the case is at a significantly earlier stage than either *Personal Genomics* or *IBM*.

Discovery in this case has not progressed beyond the earliest initial disclosures. The parties have not yet even begun making Paragraph 4 disclosures under the District of Delaware Default Standard for Discovery, Including Electronically Stored Information (ESI). No claim construction briefing, document production, or depositions have occurred. And the "most burdensome stages of the cases—completing fact discovery, preparing expert reports, filing and responding to pretrial motions, preparing for trial, going through the trial process, and engaging in post-trial motions practice—all lie in the future." *IOENGINE, LLC v. PayPal Holdings, Inc.*, No. 18-452-WCB, 2019 WL 3943058, at *5 (D. Del. Aug. 21, 2019) (granting stay). The early stage of this litigation thus favors continuing the stay.

      **C.    A Continued Stay Will Not Cause WalkMe Undue Prejudice or Clear Tactical Disadvantage**

WalkMe will not suffer undue prejudice or clear tactical disadvantage if the Court continues the stay during the pendency of Whatfix's appeals. A "mere potential delay of litigation" does not constitute undue prejudice. *IBM*, 2023 WL 8275938, at *3. Undue prejudice is examined under four subfactors: (1) the timing of the request for review; (2) the timing of the request for stay; (3) the status of the review proceedings; and (4) the relationship of the parties. *Ethicon LLC v. Intuitive Surgical, Inc.*, No. 17-871-LPS, 2019 WL 1276029, at *2 (D. Del. Mar. 20, 2019). These four subfactors collectively weigh in favor of continuing the stay.

First, the timing of the request for review is not within Whatfix's control. WalkMe chose when to initiate this litigation. Whatfix filed its IPRs as soon as practicable within months of the WalkMe's complaint, well before the statutory bar date. Second, there is no tactical disadvantage imposed by the timing of Whatfix's request. Following the PTAB's decisions, Whatfix timely moved to continue the present stay pursuant to the Stay Order and is promptly seeking appellate review of the patentability of the remaining Asserted Claims, consistent with its request for a continued stay. Third, the proceedings—as discussed above—remain in their infancy. There is thus no prejudice caused by extending the stay. And finally, the relationship of the parties does not counsel against continuing the stay. Even if the parties were considered competitors, WalkMe cannot show that it would suffer any purported harm for which damages could not compensate. *See Personal Genomics*, 2022 WL 4245532, at *2 (continuing stay where "damages, if any, are monetary"); *DDR Holdings*, No. 17-498-CFC, D.I. 101 at 2 (same); *IBM*, 2023 WL 8275938, at *3 (same). WalkMe chose not to plead for preliminary or interim relief, or to seek a preliminary injunction. *See* D.I. 13 at 37-38. And WalkMe chose not to oppose the present stay that has

remained in place during the pendency of the IPR proceedings. Accordingly, WalkMe will not suffer undue prejudice or clear tactical disadvantage from continuing the stay.

### III. CONCLUSION

This case remains in its earliest stages. There is no urgency for it to proceed during Whatfix's appeal or undue prejudice that would result if it does not. Nearly half of the Asserted Claims in this case have already been declared unpatentable by the PTAB. The unpatentability of the remaining Asserted Claims will be determined by the Federal Circuit in Whatfix's forthcoming appeals. At a minimum, resolution of these issues on appeal will simplify the issues to be tried. And if Whatfix succeeds as to all remaining claims, the appeal would obviate the case entirely. Whatfix therefore respectfully requests that the Court grant its request to continue the present stay of the proceedings in this case pending resolution of Whatfix's appeals.

|  |  |
|---|---|
| Dated: April 18, 2025 | YOUNG CONAWAY STARGATT & TAYLOR, LLP<br><br>*/s/ Anne Shea Gaza* |
| OF COUNSEL:<br><br>John R. Lanham<br>MORRISON & FOERSTER LLP<br>12531 High Bluff Drive<br>San Diego, CA 92130<br>jlanham@mofo.com<br><br>Bita Rahebi<br>Nima I. Kiaei<br>MORRISON & FOERSTER LLP<br>707 Wilshire Blvd.<br>Los Angeles, CA 90017<br>(213) 892-5200<br>brahebi@mofo.com<br>nkiaei@mofo.com | Anne Shea Gaza (No. 4093)<br>Robert M. Vrana (No. 5666)<br>Rodney Square<br>1000 North King Street<br>Wilmington, DE 19801<br>(302) 571-6600<br>agaza@ycst.com<br>rvrana@ycst.com<br><br>*Attorneys for Defendant*<br>*Whatfix Inc.* |

– 12 –

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 18, 2025, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

### BY EMAIL

Jacob Kirkham
**KOBRE & KIM LLP**
600 North King Street, Suite 501
Wilmington, DE 19801
jacob.kirkham@kobrekim.com

*Attorneys for Plaintiff WalkMe Ltd.*

Michael Ng
Daniel Zaheer
Kim Kennedy
**KOBRE & KIM LLP**
150 California Street, 19th Floor
San Francisco, CA 94111
Michael.Ng@kobrekim.com
Daniel.Zaheer@kobrekim.com
Kim.Kennedy@kobrekim.com

George Stamatopoulos
**KOBRE & KIM LLP**
800 Third Avenue, New York
New York, 10022
George.Stamatopoulos@kobrekim.com

James Pooley
**JAMES POOLEY, PLC**
325 Sharon Park Dr., #208
Menlo Park, CA 94025
james@pooley.com

*Attorneys for Plaintiff WalkMe Ltd.*

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

*/s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Robert M. Vrana (No. 5666)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
rvrana@ycst.com

*Attorneys for Defendant Whatfix Inc.*